FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ MAY 2 3 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID PAIN,
                Petitioner,

       -v-

THE PEOPLE OF THE STATE OF NEW YORK,

                Respondent.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
04-CV-1232 (NG)(LB)

**BLOOM, United States Magistrate Judge:**

      The Honorable Nina Gershon, United States District Judge, referred this pro se petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is recommended that the petition should be denied.

## BACKGROUND

      According to the testimony adduced at trial, petitioner, wearing a mask, confronted Valencia Pincney in the the hallway of her building located at 89 Crooke Avenue in Brooklyn at approximatedly 8:00 a.m. on August 11, 1999. (Tr. at 106-107)[1]. After Ms. Pinckney stepped into her apartment, petitioner forced his way in, placed her in a choke hold, punched her in the face, told her he had a gun and threatened to kill her. (Tr. at 108-109). To fend off petitioner, Ms. Pinckney threw an open bottle of fabric softener on petitioner. However, this effort was unavailing; petitioner forced Pinckney into a face-down position and sexually assaulted her. (Tr. at 109, 158-160).

---

[1] Tr. at ___ references the trial transcript.

A neighbor of Ms. Pinckney's, Mr. Devery Coles, heard "muffled screams for help, and bodies bouncing around" and knocked on Ms. Pinckney's door. (Tr. at 194). The Petitioner attempted to flee the scene, but Mr. Coles restrained and unmasked petitioner. (Tr. at 198). Petitioner pleaded with Mr. Coles saying, "Let me go . . . you know me . . . I live next door." (Id.) During the encounter, another neighbor, Shakira Meggett, came upon the scene. (Tr. at 233). As Mr. Coles was waiting for police authorities,[2] petitioner escaped.

Police Officers Lopez and Yee received a series of radio calls: the first call was for help; the second call reported a dispute in progress; and the third call reported an assault in progress.[3] As the officers arrived at 89 Crooke Avenue, they observed petitioner exiting the building. (Tr. at 270-271, 272-274). Police described petitioner as "sweating profusely . . . very hyper, very nervous". (Id.) Officer Lopez called out to petitioner, who ignored him. The officers called out a second time, caught petitioner's attention, and asked petitioner to come over to the car. Petitioner complied with the request. (Id.)

Police Officers Ennis and Martinez also arrived at 89 Crooke Avenue in response to the radio calls of two people fighting in the hallway and of an assault in progress. (Tr. at 285-286). Officers Ennis and Martinez saw Officer Lopez with petitioner and proceeded into the building, where they encountered Mr. Coles. Mr. Coles described his confrontation with petitioner to the

---

[2] While restraining petitioner in the building hallway, Mr. Cole screamed for residents to call the police, which they did.

[3] At trial, three recorded calls to 911 were introduced into evidence as People's Exhibit 12 (Tr. at 243-244): 1) a woman who reported that she heard another woman screaming at the premises; 2) another woman who reported that the person occupying apartment 4H at the premises had been assaulted; and 3) a caller who reported that a man was holding someone on the hallway floor at 89 Crooke Avenue.

2

officers. (Tr. at 286-289).

Meanwhile, Officer Lopez frisked petitioner, recovered a ski mask from petitioner's right rear pocket, and returned the mask to that pocket. (Tr. at 280-281, 283). Officer Lopez, who noticed that petitioner smelled of laundry detergent, handcuffed petitioner behind his back and placed him in the back seat of the patrol car. (Tr. At 275-278). Officer Ennis brought Ms. Pinckney and Mr. Coles out of the building and Officer Lopez brought petitioner out from the patrol car. (Tr. at 276, 282). Mr. Coles identified petitioner as the person who he had grabbed leaving Ms. Pinckney's apartment.[4] (Tr. at 208). After he was identified, the officers arrested petitioner.

Petitioner was charged with Sodomy in the First Degree, Burglary in the Third Degree, Assault in the in the Second and Third Degrees, and Sexual Misconduct. Petitioner was also charged with two counts each of Burglary in the Second Degree, Sexual Abuse in the First Degree and Sexual Abuse in the Third Degree.

After indictment, petitioner moved to suppress the introduction of the ski mask into evidence on the ground that police officers obtained the mask unlawfully. Petitioner also moved to suppress the showup identifications made by Mr. Coles and Ms. Pinckney. The court denied petitioner's motions. During trial, the prosecution presented the testimony of Ms. Pinckney, Mr. Coles, and Ms. Meggett, all of whom identified petitioner as the man who attacked Pinckney at her apartment on August 11, 1999.

After a jury trial in Supreme Court Kings County, petitioner was found guilty of Burglary in the First Degree, Burglary in the Third Degree, and Assault in the Third Degree. On June 15,

---

[4] Ms. Pinckney also identified petitioner. (Tr. at 181-182, 185).

3

2000, petitioner was sentenced, as a second violent felony offender, to concurrent terms of imprisonment of twenty-five years on the first-degree burglary count, three and one-half to seven years on the third-degree burglary count, and one year on the assault count.

**PROCEDURAL HISTORY**

Petitioner appealed his conviction to the Appellate Division, Second Department raising two claims: 1) the trial court failed to question a juror about whether her desire to attend a wedding affected her ability to deliberate fairly; and 2) petitioner's sentence on the first-degree burglary count was excessive. Pet. App. Mem. at 2.

By decision and order dated October 3, 2002, the Second Department unanimously affirmed the petitioner's judgment of conviction. People v. Pain, 298 A.D. 2d 604 (2d Dep't 2002). Leave to appeal to the Court of Appeals was denied on December 18, 2002. People v. Pain, 99 N.Y. 2d 562 (2002). Petitioner subsequently moved for a writ of error *coram nobis* on the ground of ineffective assistance of appellate counsel. Petitioner argued that appellate counsel should have raised that the ski mask and the identification evidence should have been suppressed as the fruit of an unlawful arrest. By decision and order dated September 15, 2003, the Appellate Division denied petitioner's *coram nobis* motion, holding that petitioner failed to establish that he was denied the effective assistance of appellate counsel. People v. Pain, 308 A.D. 2d 495 (2d Dep't 2003). Petitioner was denied leave to appeal to the New York Court of Appeals on December 30, 2003. People v. Pain, 1 N.Y. 3d 577 (2003) (Smith, J).

Petitioner timely filed the instant pro se petition seeking habeas corpus relief under 28 U.S.C. § 2254 on the ground that appellate counsel failed to raise a meritorious Fourth Amendment claim. Specifically, petitioner contends that appellate counsel was ineffective for his

4

failure to raise the unconstitutionality of the seizure of the ski mask.

**DISCUSSION**

I. <u>**Standard of Review**</u>

Petitioner's claims are governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. For claims that have been adjudicated on the merits in state court proceedings, a petitioner must show that the state court proceedings:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254 (d).

In <u>Williams v. Taylor</u>, the Supreme Court held that a state court decision is "contrary to" clearly established federal law if a state court (1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 38 (2000). "'Clearly established Federal law' in §2254(d)(1) 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision." <u>Id.</u>, at 412, (cited in <u>Carey v. Musladin</u>, 127 S. Ct. 649, 653, 166 L. Ed. 2d 482 (2006)). As to the "unreasonable application" clause of the AEDPA, habeas relief is warranted only "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 407.

5

The Supreme Court has ruled that the reasonableness of the application of the law is to be assessed objectively rather than subjectively. Id. at 409-10. In addition, the Court cautioned that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). The Second Circuit has explained that while "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)(quotation omitted).

## I. Petitioner's Ineffective Assistance of Appellate Counsel Claim

A habeas petitioner claiming ineffective assistance of counsel must meet a two-part test to merit federal habeas relief. In order to establish ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 688, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Thus to establish an ineffective assistance of counsel claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of

6

reasonableness," id. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In assessing whether counsel's performance was reasonable, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689; Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

In assessing counsel's performance, the Court "must conduct an objective review ... measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" Wiggins v. Smith, 539 U.S. 510, 523, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (quoting Strickland, 466 U.S. at 688-89)). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Id. at 521 (quoting Strickland, 466 U.S. at 688).

To establish the requisite effect of counsel's performance on the outcome of the proceedings, it is not sufficient for the habeas petitioner to merely show that counsel's errors had "some conceivable effect" on the outcome. Strickland, 466 U.S. at 693. Rather, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id.

A claim for ineffective assistance of appellate counsel is evaluated under the same standard as a claim for ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 802 (2d Cir. 1992). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Smith v. Robbins, 528 U.S. 259, 285 (2000) (applying the Strickland test to appellate counsel's performance); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Mayo, 13 F.3d at 533-34.

A petitioner may establish ineffective assistance by showing that appellate counsel failed to raise "significant and obvious issues" on appeal. Kendrick v. Greiner, 296 F.Supp.2d 348, 360 (E.D.N.Y. 2003) (quoting Mayo, 13 F.3d at 533). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983)); accord e.g., Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001)("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") Thus, a petitioner may establish constitutionally ineffective assistance of counsel only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533; Otero v. Eisenschmidt, No. 01 Civ. 2562, 2004 WL 2504382 at *29 (S.D.N.Y. Nov. 8, 2004).

Furthermore, under § 2254 (d)(1), our inquiry is not whether the Appellate Division's

8

rejection of petitioner's ineffective assistance claim was incorrect, but rather, whether in light of Strickland, it was "objectively unreasonable." See Williams, 529 U.S. at 410 ("an unreasonable application of Federal law is different from an incorrect application.") To be "objectively unreasonable," a state court's application of clearly established Federal law must involve "[s]ome increment of incorrectness beyond error." Sellan, 261 F.3d at 315 (internal quotation marks omitted); Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006).

Petitioner argues that appellate counsel was ineffective for failing to raise a meritorious Fourth Amendment issue which was apparent on the face of the trial record. Petitioner raised this issue in his application for a writ of error coram nobis arguing that his appellate counsel should have raised the claim that the ski mask and identification evidence should have been suppressed as the fruit of an unlawful arrest. The Appellate Division denied petitioner's application for a writ of error coram nobis on this issue. The question before this Court, therefore, is whether the Appellate Division's denial of petitioner's ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of Federal law.

Appellate counsel's appellate brief presented two non-frivolous claims on the petitioner's behalf: 1) that the court failed to question a juror whether her concern about attending a wedding affected her ability to deliberate fairly and 2) that petitioner's sentence was excessive. Appellate counsel identified the basis in the record for petitioner's claim that he was denied the right to a fair and impartial jury[5] and the case law to support the claim. Appellate counsel's brief set forth that defense counsel twice moved for a mistrial arguing that juror number three, who sent two notes to the court that she was in a wedding party and had to be in Syracuse, New York

---

[5] Subsequent to the People resting (Pet. App. Brief 16-17 citing Tr. at 397-398) jurors raised their concerns about the length of the trial, deliberations and plans they had made.

9

for the rehearsal and dinner by Friday afternoon, was not questioned by the court whether she could fairly deliberate despite her preoccupation with attending the wedding. Pet. App. Brief at 4 (Respondent's Exh. A). Appellate counsel argued "[t]he jury reached a verdict on Friday, in time for juror number three to attend the wedding." Id. The selection and presentation of this claim on direct appeal, although unsuccessful in overturning the conviction, does not establish that petitioner was denied the effective assistance of appellate counsel.

Petitioner contends that he was unlawfully arrested and the trial evidence used against him was obtained in violation of his Fourth Amendment rights. Petitioner claims that the retrieved ski mask 'contributed to his conviction', but should have been suppressed at trial as 'fruit of an unlawful arrest.' Although counsel moved to suppress the evidence before trial, petitioner argues that the hearing court was never asked to consider petitioner's unlawful arrest claim. Pet. Traverse ¶¶ 4-5. Petitioner argues that had the court been presented with the issue, the mask would have been suppressed. Id. First, petitioner has not established that appellate counsel was objectively unreasonable in failing to raise the suppression of the ski mask on appeal. Second, had this issue been raised, there was no reasonable probability that defendant's appeal would have been successful.

Moreover, petitioner misunderstands the scope of this Court's habeas review. The instant petition raises ineffective assistance of appellate counsel claim based on counsel's "failure to raise a meritorious fourth amendment claim." Pet. at ¶ 13. The Court cannot review

petitioner's underlying Fourth Amendment claim.[6] Even if the unlawful arrest claim had been raised on the suppression motion,

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Stone v. Powell, 428 U.S. 465, 482 (1976). Because "[t]he federal courts have approved New York's procedure for litigating Fourth Amendment claims," Holmes v. Scully, 706 F.Supp. 195, 201 (E.D.N.Y. 1989), see McPhail v. Warden, Attica Correctional Facility, 707 F.2d 67, 69 (2d Cir. 1983)(Article 710 of New York Criminal Procedure Law provides a defendant with an opportunity for full and fair litigation of Fourth Amendment claims), any claim for habeas relief on the ground of an unlawful search and/or seizure would be barred by Stone.

The state court decision denying petitioner's ineffective assistance of appellate counsel claim was not contrary to or an unreasonable application of clearly established Federal law. Accordingly, the instant petition for habeas corpus relief should be denied.

## CONCLUSION

Accordingly, it is recommended that petitioner's application for a writ of habeas corpus should be denied. Because petitioner has not shown a substantial denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United

---

[6] Petitioner states "[n]otable however, Officer Lopez's testimony at the suppression hearing made no mention of defendant being handcuffed behind his back, and place[d] in the police cruiser immediately after the illegal search. This testimony was given for the first time at trial (275). Petitioner respectfully submits, that had the hearing court been aware that the petitioner was handcuffed and placed in the police cruiser before the Officers had probable cause to believe the defendant had committed a crime, the court would have suppress[ed] the mask as fruit of an illegal arrest." Pet. at ¶ 13.

11

States, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds*, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), *cert. denied*, 531 U.S. 873 (2000).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 83, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED:

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: May 22, 2007
       Brooklyn, New York